UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH F. KEITH, II

           Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

Case No. 16-cv-1072

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Kenneth Keith filed this Social Security appeal in order to challenge the Defendant's denial of his disability claim. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error. For the reasons explained below, I conclude that the ALJ's finding of non-disability is supported by substantial evidence and should be AFFIRMED.

**I.  Summary of Administrative Record**

On April 25, 2013, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability primarily due to a back impairment, beginning on December 8, 2009. After his claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing. On April 16, 2015, Plaintiff and a vocational expert appeared and gave testimony before an administrative law judge ("ALJ"). (Tr. 40-82). On September 11, 2015, ALJ Kristen King issued a written decision finding that Plaintiff was not disabled. (Tr. 22-34). The Appeals Council denied further review, leaving the ALJ's decision as the Commissioner's final determination. Plaintiff filed this appeal to obtain additional judicial review.

1

Plaintiff was just 32 years old on the date of his alleged disability, and remained in the younger individual age category through the date of the ALJ's decision. (Tr. 32). He has a high school education and past relevant work as a welder, sandblaster, painter, and bricklayer. (Tr. 25, 32). The record reflects that he continued to engage in substantial gainful activity well past his alleged onset date of December 8, 2009, but that he quit working and had no earnings after May 2012. (Tr. 24).

The ALJ determined that Plaintiff suffers from severe impairments of "[d]egenerative disc disease; status-past back surgery with residual pain and limitations; obesity; and hypertension." (Tr. 24). However, the ALJ determined that Plaintiff does not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff is entitled to a presumption of disability. (Tr. 28). Instead, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of sedentary work with the following restrictions:

> He can occasionally operate foot controls. He can never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs. He can occasionally balance, stoop, kneel and crouch. He can never crawl. He must avoid all use of dangerous machinery and all exposure to unprotected heights. He can perform no commercial driving. He is limited to simple, routine tasks. He is limited to jobs in which changes in the work setting occur no more than approximately 15 percent of the workday. He must have the option to sit or stand approximately every 60 minutes for approximately one to two minutes duration, while staying at the workstation.

(Tr. 29).

There is no dispute that Plaintiff cannot perform any of his past work. However, based on the testimony of a vocational expert, the ALJ determined that Plaintiff would be able to perform a substantial number of jobs in the national economy, including the representative unskilled occupations of assembler, packer, bander, order clerk, and

2

surveillance system monitor. (Tr. 33). Therefore, the ALJ concluded that Plaintiff was not under a disability. (*Id.*)

Plaintiff argues that the ALJ erred when she: (1) failed to give controlling weight to the opinions of treating sources; (2) improperly determined that Plaintiff was not fully credible; (3) improperly evaluated his RFC; (4) failed to consider his sleep apnea; and (5) failed to consider the impact of his obesity. I find no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

3

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Whether considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims

### 1. Evaluation of Treating Source Opinions

Plaintiff first argues that the ALJ failed to give "controlling weight" to the opinions of his treating physicians and/or failed to adequately articulate the basis for the weight given to their opinions. Specifically, Plaintiff argues that the ALJ erred in his analysis of the "opinions" of the following eight physicians: "Drs. Martin Fritzhand (Tr. 326-334); John Roberts (Tr. 304-325); Shoba Rao (Tr. 361-363; Tr. 372-377; Tr. 588-575); Jennifer Chung (Tr. 401-409); Rajbir Minhas (Tr. 411-566); Sairam Atluri (Tr. 370-371); Jason McNeese and John Beresh (Tr. 378-399)." (Doc. 9 at 7).

Other than the preceding quoted sentence, Plaintiff offers no specific argument concerning any of the referenced physicians in the context of this claim. Plaintiff does not explain the manner in which he believes the ALJ's analysis was deficient, or which specific "opinions" that Plaintiff believes would have impacted the RFC determination or any other portion of the decision. Instead, Plaintiff simply asserts that the ALJ's analysis was "certainly incorrect and does not comply" with the treating physician rule that an ALJ articulate "good reasons" for discounting the opinions of a treating physician. (*Id.*).

Notably, Dr. Fritzhand is the only one of the eight identified physicians who offered <u>any</u> medical opinions concerning Plaintiff's functional limitations. (*See* Tr. 326-334).[1] The ALJ gave his opinions "little weight." (Tr. 32). However, Dr. Fritzhand was not a treating physician, but an examining consultant. The ALJ reasoned that Dr.

---

[1] Although Plaintiff references this page range, the opinions rendered by Dr. Fritzhand appear at Tr. 326-328. Tr. 329-330 appears to be an imaging report dated June 20, 2013 that was either ordered by or transmitted to Dr. Fritzhand for review. Tr. 331-334 contain the results of muscle testing conducted by Dr. Fritzhand, all of which was normal.

5

Fritzhand's opinions were expressed in "vague terms," insofar as he indicated that Plaintiff could perform "at least a mild to some moderate amount of sitting, ambulating, standing, bending, pushing, pulling, lifting, and carrying heavy objects." (Tr. 32). As the ALJ points out, Dr. Fritzhand also expressed his opinions in terms of the "least" amount that Plaintiff can do, whereas the regulatory scheme requires an ALJ to determine the "most" that a Plaintiff can do in formulating his RFC. (*Id.*)

The undersigned discerns no error in the ALJ's analysis of Dr. Fritzhand's opinions. Because he was not a treating physician, the ALJ was not required to give "controlling weight" to those opinions, and the "good reasons" rule is inapplicable. Nevertheless, the ALJ adequately explained her reasons for giving the opinions little weight. Moreover, case law strongly suggests that Dr. Fritzhand's opinions that Plaintiff was capable of mild to moderate amounts of various activities are consistent with a much <u>higher</u> exertional level than the very restricted sedentary level determined by the ALJ. *See, e.g., Wise v. Com'r of Soc. Sec.*, Case No. 1:14-cv-709, 2015 WL 2169684 at *3 (S.D. Ohio May 8, 2015)(affirming where ALJ found plaintiff capable of medium level work after giving "significant weight" to opinion that plaintiff could perform "at least" a "mild to moderate" amount of similar activities); *Stanley v. Com'r of Soc. Sec.*, Case No. 1:14-cv-870, 2015 WL 9473402 (S.D. Ohio Dec. 2, 2015)(collecting cases holding that similar vague descriptors support exertional levels of light to medium work). Therefore, giving Dr. Fritzhand's opinions greater weight would not have altered the ALJ's non-disability determination.

Arguably, Plaintiff's undefined accusations that the ALJ disregarded unspecified opinions offered by seven other physicians is so cursory as to warrant no further discussion. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("issues

6

adverted to in a perfunctory manner, unaccompanied by some effort at developed arguments, are deemed waived") (internal quotation omitted).  Nevertheless, the undersigned has reviewed all of the cited records and confirms that the ALJ did not disregard any medical opinions offered by any treating physician.

The second identified physician, Dr. Roberts, performed a spinal fusion in late 2009, after which Plaintiff variously reported having been "pain free" for 4 to 8 months, returning to full-time work. (Tr. 304, 308, 401).  On 3/18/11, Dr. Roberts indicated that Plaintiff had returned with new complaints of back pain that had increased to pre-surgery levels, despite the lack of any precipitating event, and despite a "completely unremarkable" review of systems. (Tr. 306).  Although one record indicates that Plaintiff's MRI shows "disc desiccation and narrowing at every level in the lumbar spine," Dr. Roberts does not appear to believe Plaintiff was overly restricted, since in the same record he advises Plaintiff to "consider joining a gym," and to engage in a low-impact exercise program. (Tr. 305).  Dr. Roberts' last record, dated 7/22/11, states that Plaintiff "has no radicular component" to his back pain and is frustrated because he has missed days from work. (Tr. 304).  Dr. Roberts indicates he has again reviewed the MRI scan "which reveals <u>no demonstrable pathology</u>" other than "mild degenerative changes at the L3-4 level" that are "not significant enough to worry about." (*Id.*, emphasis added) He concludes:  "I have no explanation for his chronic pain, but there is really nothing I am going to be able to do to alter it," other than the prior recommended exercise program and referral to pain management. (*Id.*)  As noted by the ALJ, Plaintiff's earnings indicate that he continued to work until May 2012, long after Dr. Roberts' last record.  Thus, Dr. Roberts' records do not support any greater work restrictions than determined by the ALJ.

The third identified provider, Dr. Rao, was a family practice doctor who referred Plaintiff to Dr. Atluri for pain management. Two records dated in July and August 2013 include brief references to a diagnosis of lumbar radicular pain. However, on August 23, 2013, she counseled Plaintiff to "walk 10,000 steps a day" and to follow up in 3 months. (Tr. 373). Her records do not include any medical opinions on Plaintiff's limitations, and do not support greater limitations than determined by the ALJ.

The fourth treating physician, Dr. Atluri, was one of several pain management physicians. In August 2013, Dr. Atluri indicated that because Plaintiff scored high on a screening tool, he was not comfortable treating Plaintiff with opioids, and would instead refer Plaintiff to other providers if he sought such treatment. (Tr. 371). Although Plaintiff does not specifically identify in his first claim any opinion of any treating physician to which the ALJ failed to give controlling weight, elsewhere in his briefing, Plaintiff refers to the following statements contained in Dr. Atluri's report:

> The pain does wake him up at night and does make him depressed. On a depression scale it is 10/10. On a pain scale of 0 to 10, at its worst it is 10/10. The patient is able to function only 10% of his full function capability. Currently the patient is applying for disability.

(Tr. 370). In context, it is clear that the statements do not reflect Dr. Atluri's opinions regarding Plaintiff's functional abilities, but rather, Dr. Atluri's record of Plaintiff's subjective complaints. The report does not include any detailed functional assessment that would support such an extreme functional limitation, but does include physical examination findings that undermine such limitations:

> PHYSICAL EXAMINATION: The patient was well developed and not in any distress…. The patient was oriented to time, place, and person and did not appear to be depressed, anxious, agitated, in severe pain, or intoxicated. …No tenderness was seen in the spinous processes, paraspinal muscles, facets, or SI joints. ….Lower extremities had normal motor strength. No sensory deficits could be appreciated in the lower

8

> extremities. Neither leg had weakness with dorsiflexion or plantar flexion. Gait was normal.

(Tr. 371). Thus, the ALJ did not err in his assessment of Dr. Atluri's records.

Dr. Baresh and Dr. McNeese are in the same practice group and prescribed pain medications in 2014. Their records consistently reflect that on examination, Plaintiff had a normal gait, normal strength and muscle tone in his legs, and no radicular pain. Their records note that Plaintiff denies side effects from his pain medications, which are "improve quality of life, function, and sleep." (Tr. 389). Both physicians consistently advised Plaintiff to engage in a home exercise program while he was not in PT. Their records do not contain any opinions concerning Plaintiff's functional limitations.

The seventh identified clinician, Dr. Chung, is another pain management doctor whose single clinical record is dated December 9, 2014.[2] (Tr. 407-409). In addition to refilling Plaintiff's medications, she prescribes daily stretching and continued use of other "effective" treatments such as a TENS unit and back brace. (Tr. 408-410). Like the other referenced physicians, her records include no medical opinions about the degree of Plaintiff's limitations.

The eighth physician is Dr. Minhas, also a pain management specialist. His clinical records indicate Plaintiff's diagnoses include "failed back surgery syndrome" and "chronic pain syndrome" in addition to degenerative disc disease and insomnia. (Tr. 411, 425, 437).[3] Plaintiff reported that the prescribed medications "have helped improve the quality of life and helped in pscyho-social functioning." (Tr. 437).

---

[2]Other referenced clinical records attributed by Plaintiff to Dr. Chung are signed by Nurse Practitioner Ashley Gribbins. (Tr. 401-406). Nurse Gribbins notes that Plaintiff experiences no side effects from his medications, which increase his ability to perform daily activities. (Tr. 401). He appeared in no acute distress, had no tingling or numbness, but weakness in his legs. (Tr. 402).
[3]Most of the progress notes attributed to Dr. Minhas appear to have been authored by Medical Assistants.

9

Consistent with the other treating physicians identified by Plaintiff, Dr. Minhas included no medical opinions on the degree of Plaintiff's functional limitations, or other findings that would alter the non-disability determination in this case.

In sum, the ALJ's opinion contains an accurate summary of all relevant medical evidence, including evidence from all of the referenced physicians. (*See* Tr, 25-28).

### 2. The Adverse Credibility Determination

Plaintiff's second claim is that the ALJ erred in finding his statements to be "not entirely credible." (Tr. 30). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387.

The ALJ identified numerous inconsistencies in the records, pointing out, for instance, that "results of multiple urine drug screenings raised questions about the claimant's adherence to his medication regimen," including a September 2014 urine drug screen that produced "inappropriate" results and a December 2014 test that detected no prescribed hydrocodone. (Tr. 27). The ALJ elaborated on the pain medication inconsistencies as well as other inconsistencies that led her to find Plaintiff's pain allegations to be not fully credible:

> First and foremost, the medical evidence does not corroborate the claimant's allegations regarding the intensity, persistence and limiting

effects of his back problems. Although the claimant underwent a major spine surgery in 2009, his condition quickly improved following that procedure and he subsequently engaged in substantial gainful activity for more than 2 years. Specifically, his pain abated postoperatively and did not return for several months. While diagnostic imagery depicted some remaining nerve-root compression, this did not account for the claimant's renewed complaints of pain according to his spinal surgeon. Furthermore, the claimant exhibited no clinical signs consistent with such severe pain, like diminished strength or sensation. Consistent with these findings, a medical consultative examiner found no evidence of muscle weakness or atrophy. Although various clinicians have noted a diminished range of motion in the claimant's lower back and watched the claimant perform positive straight-leg raising tests, other findings essentially do not corroborate significant radiculopathy given the noted lack of muscle weakness, his normal gait, and the lack of atrophy. Of note, no clinician observed abnormalities in the claimant's gait, which casts some doubt on his allegations regarding his limited tolerance for standing and walking. Similarly, treatment notes from January 2015 specifically note positive back pain without radicular pain on examination….

Inconsistencies regarding the claimant's use of pain medication… undermine his allegations regarding the intensity, persistence and limiting effects of his impairments. Results of multiple drug tests demonstrated that the claimant did not always take his pain medication as prescribed. However, when taken consistently, the claimant realized considerable, albeit incomplete, relief of his back pain from these medications. Furthermore, although the claimant mentioned that these drugs inhibited his focus, the treatment records do not document any such side effects.

The claimant's activities after the alleged onset date [August 2009] further erode the credibility of his allegations of pain and limitation stemming from his back problems. His spine surgeon cleared the claimant to return to work in 2010 just months after his surgery. Treatment records illustrate that the claimant worked through May 2012. At the hearing, the claimant described this work as physically demanding in that he often had to lift heavy steel used to construct safes (Testimony).

Activities other than work cast further doubt on the credibility of the claimant's allegations…. Treatment notes document the claimant going on vacation in July 2013 (3F/4, 6). Such records also mention the claimant fishing and doing yard work (3F/7 and 9F/39). While the claimant testified that he had not done either activity in two years, the treatment records and testimony confirm that he fished and performed yard work after his alleged onset date…. At the hearing, the claimant also endorsed several activities that reflect his ability to meet the standing and walking demands of work at the sedentary exertional level, including walking his daughter to the bus stop and grocery shopping (Testimony).

11

(Tr. 30-31). The ALJ also pointed out that Plaintiff "has experienced some symptoms that no acceptable medical source has attributed to a medically determinable impairment," such as complaints of abdominal pain that abated by January 2014. (Tr. 28). Last, the ALJ noted that nothing in the record suggested that his obesity or high blood pressure would preclude him from working. (Tr. 31).

In urging this Court to reverse, Plaintiff first complains that the ALJ did not adequately articulate or explain the adverse credibility finding. Having reviewed the ALJ's extensive analysis, the undersigned finds it to be both adequately articulated, and substantially supported.

Plaintiff more specifically attacks the ALJ's reference to the activities and work he engaged in after his 2009 onset date, because "often claimants obtain assistance from SSA in completing the initial application and often times have little say in establishing the alleged onset date." (Doc. 9 at 11). Plaintiff testified that his work was very physically demanding and involved the lifting of heavy steel. (Tr. 64). The ALJ was permitted to consider both the fact that Plaintiff continued to work full-time, and the type of work in which he was engaged, in discounting the credibility of his statements that he could no longer perform even a reduced level of sedentary work. *See Porter v. Com'r of Soc. Sec.*, 2014 WL 1118419 at *3 (E.D. Mich., March 21, 2014) (ALJ reasonably considered claimant's work after his disability onset date in assessing credibility). In addition, Plaintiff was represented by counsel, who could have amended Plaintiff's alleged onset date at any time if desired.

Plaintiff next complains that his persistent efforts to obtain pain relief, through seeking treatment from multiple pain management physicians, should have been viewed by the ALJ as bolstering his credibility. He argues that the ALJ should not have

found inconsistency in his testimony that he no longer drives due to side effects from his pain medications, because Dr. Baresh noted on one occasion that Plaintiff does not drive (though no reason is noted), and impaired focus or concentration is a listed side effect in a National Institute of Health report. Again I find no error. On multiple occasions, Plaintiff's physicians noted Plaintiff's denial of adverse side effects. (*See, e.g.*, Tr. 378, 381, 387, 389 denies difficulty concentrating; Tr. 380, 383, 384, 386 "meds do not cause side effects [but]…do improve quality of life, function, and sleep"; Tr. 401, 404, 407, 488, 499, 524, 533, 543, 553). To the extent that Plaintiff did experience side effects (despite his frequent denials), the ALJ took them into account by prohibiting him from operating dangerous machinery. (Tr. 29, 31).

Plaintiff goes on to describe other medical records that he believes support his testimony that he suffers from a disabling level of pain. Plaintiff argues that because the ALJ acknowledged that his post-surgery imaging studies continued to show "some remaining nerve root compression" and that his pain medications offer incomplete relief, the ALJ should have found his allegations of <u>disabling</u> pain to be fully credible. Plaintiff also criticizes the ALJ's conclusion that abnormal objective findings "did not account for the claimant's renewed complaints of pain." (Tr. 30). However, the ALJ's conclusion directly referenced the statements of Plaintiff's spine surgeon, Dr. Roberts, who noted that the MRI scan showed "mild degenerative changes…but not significant enough to worry about," with "no explanation for his chronic pain." (Tr. 304).

Although Plaintiff suggests that the records of other treating physicians contain additional "objective findings" consistent with his testimony, (Doc. 9 at 13), the cited records are not to "objective" findings, but instead reflect Plaintiff's *subjective* complaints to his pain management physicians. See *McCready v. Com'r of Soc. Sec.*, 2012 WL

13

1060088 at *8 (E.D. Mich. March 2, 2012). The same physicians continually advised Plaintiff to exercise, implicitly undermining his complaints of disabling pain. (*See, e.g.*, Tr. 449, advising plaintiff to perform back exercises and to walk, stretch and swim).

All pertinent records were fully considered by the ALJ. (*See* Doc. 9 at 9-10; *compare* Tr. 25-28). Having reviewed the same records, the undersigned finds substantial evidence to support the ALJ's credibility determination. Even Plaintiff's *subjective* reports did not consistently report a disabling level of pain, considering his denial of side effects and consistent reports that his medications improved his quality of life. (*See also, e.g.*, Tr. 392, 10/30/13, report that pain is "4-6/10, meds give 40-50% relief for 24 hours, able to do more, go to zoo all day…can fx better…may volunteer, tolerating meds well with no side effects, they allow pt to perform ADL's, remain active and have a better QOL with no somnolence or driving impairment, as always we [e]ncouraged diet and exercise….").

As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230–231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). The fact that there is an evidentiary basis for some level of pain does not mean that an ALJ must find that a plaintiff suffers from a disabling level of pain. *See Bruce v. Com'r*, 2009 WL 239023 at*12 (S.D. Ohio Jan. 29, 2009) (affirming evaluation of plaintiff's back pain as less than disabling). On the whole, Plaintiff's arguments on credibility amount to a reweighing of the evidence, and do nothing to undermine the substantial evidence that supports the ALJ's credibility determination.

**3. Evaluation of Plaintiff's Residual Functional Capacity**

Plaintiff's third claim is that the ALJ erred in determining his RFC. Plaintiff generally makes broad arguments that the RFC does not accurately reflect all of his limitations, but without specifying any particular limitation that the ALJ failed to include. Instead, Plaintiff largely reiterates that the ALJ should have found greater limitation on the basis of his subjective pain complaints, citing to his reports to Drs. Minhas and Beresh, that virtually all activities ("standing, walking, lifting, bending, twisting, driving, coughing, sneezing, going up or down stairs or doing other ADLs, getting in and out of a chair, doing yardwork") aggravate his pain and cause "increased pain that is helped with the medication." (Tr. 392-395; *see also* Tr. 379, noting that movement worsens pain but that walking, sweeping, and mopping "improve with medication"). For the reasons discussed above, I find no error in the ALJ's failure to fully credit Plaintiff's subjective complaints of disabling pain.

Plaintiff also asserts error based upon the ALJ's categorical statement that "no clinician observed abnormalities in the claimant's gait…." (Tr. 30, emphasis added). On December 9, 2014, January 8, 2015, and February 5, 2015, Nurse Practitioner Ashley Gribbins and Dr. Chung with Advance Spine & Pain Management noted "Gait: antalgic."[4] (Tr. 402, 405, 408).

In addition, Plaintiff maintains that the ALJ misstated the record by finding a lack of "significant" radicular pain, based upon a lack of clinical signs such as diminished strength or sensation, a lack of muscle weakness or atrophy, and other normal findings including his normal gait. (Tr. 30). As evidence of radicular pain, Plaintiff points to July

---

[4] Plaintiff mistakenly attributes all findings as made by Dr. Chung, and cites Tr. 302, which is a page in Plaintiff's brief before the Appeals Council.

15

26, 2013 and August 23, 2013 notes from Plaintiff's family doctor that list "[l]umbar radicular pain" under the heading of "chronic problems." (Tr. 361-363, 372). The pain specialist to whom Dr. Rao referred Plaintiff, Dr. Atluri, also recorded Plaintiff's complaint of back pain with "no pain down his legs but … pain and tingling in both feet." (Tr. 370). As previously discussed, despite his assessment of pain "with radiculopathy," Dr. Atluri found normal motor strength, no sensory deficits and no weakness in Plaintiff's lower extremities, and a normal gait. (Tr. 371).

Neither the ALJ's statement regarding Plaintiff's gait nor the conclusion that he lacks "significant" radiculopathy constitutes reversible error. The ALJ's misstatement regarding "no clinician" ever having observed gait abnormalities constitutes harmless error. Despite the observation of an antalgic gait on three occasions, virtually all other examinations by multiple clinicians found no gait abnormalities. (*See, e.g.*, Tr. 327-328, 371, 379, 386, 389, 448, 490, 501). More importantly, Plaintiff does not explain how an intermittent antalgic gait would have required any greater limitation than to <u>sedentary</u> work, with only "occasional" operation of foot controls, no climbing of ladders, ropes or scaffolds and only "occasional" ramps or stairs, and with a sit/stand option approximately every 60 minutes.

As to the statement regarding the lack of "significant" radicular pain, the undersigned finds no error at all. On multiple occasions, Plaintiff's treating physicians expressly noted the absence of radicular pain, reinforced by clearly recorded examination findings and test results. (Tr. 304, 326, 379, 382, 385-386, 388, 405, 408). In the few records that include any reference to radicular pain, examination findings are minimal, consistent with the ALJ's analysis. (*See* Tr. 371).

16

### 4. Consideration of Plaintiff's Sleep Apnea and Obesity

Plaintiff's fourth claim argues that there is evidentiary support that his pain interferes with his sleep, as reported to his physicians on several occasions. (*See* Tr. 378-386). In his reply memorandum, he re-characterizes this claim as a "failure to address his sleep apnea resulting from his obesity and its effect on his ability to work." (Doc. 14 at 8). He points out that Dr. Minhas included a diagnosis of insomnia in 2011 (when Plaintiff was still working full-time). Based on these records, he argues that the ALJ should have considered his "fatigue" as requiring greater limitations.[5] For the reasons expressed, I conclude that the ALJ's RFC determination, precluding the operation of dangerous machinery, protecting Plaintiff from unprotected heights, and limiting him to simple, repetitive tasks, adequately accounts for Plaintiff's general complaints of "fatigue."

In Plaintiff's fifth claim, he argues that the ALJ did not comply with SSR 02-01p by fully considering additional functional limitations that would be caused by his obesity. Plaintiff clarifies that he is not claiming that his obesity prevents him from all work, (Doc. 14 at 9), but instead argues that the ALJ failed to "properly" assess his obesity.

The ALJ noted Plaintiff's height of five foot seven or five foot eight, and weight ranging between 210 and 230 pounds, corresponding to a body mass index of almost 32. (Tr. 28). The ALJ included the following additional discussion:

> SSR 02-1p requires consideration of obesity in determining whether a claimant has… medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. Obesity may have an

---

[5]The nature of Plaintiff's fourth claim is ambiguous. In his reply he asserts that "the ALJ totally disregarded this impairment," (Doc. 14 at 9), implying error at Step 2. Step 2 error is rarely grounds for reversal, and the undersigned finds no basis for reversal here. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir.2007).

> adverse impact upon co-existing impairments. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions herein at the second through fifth steps of the sequential disability evaluation process.

(Tr. 28).

> The undersigned has also considered the intensity, persistence and limiting effects of the claimant's obesity and hypertension. However, the medical evidence does not illustrate that these impairments would prevent the claimant from working. Although the claimant has been overweight for the entire period…, his body mass index places him only in the low range of obesity. Although his physicians have noted his excess weight, none of them have expressed great concern about it. At the hearing, the claimant testified that his weight has remained unchanged for several years, suggesting that his weight did not previously prevent him from working (Testimony).

(Tr. 31).

In support of his argument that reversal is required, Plaintiff quotes extensively from the same social security ruling cited by the ALJ. Noting that under SSR 02-1p, the effects of obesity "may" cause greater limitations, Plaintiff argues that the ALJ did not properly consider the impact of obesity on his pain level, his degenerative disc disease, his insomnia, and his chronic pain syndrome, or that it might interfere with his ability to work on a sustained basis. Summing up, Plaintiff speculates that "[c]onsidering the Plaintiff's obesity…would allow the inference that his condition would be compromised by his weight." (Doc. 14 at 7).

I find no error in the ALJ's failure to find greater limitations from Plaintiff's obesity. As pointed out by the Commissioner, not only is the ALJ's analysis well-supported, but Plaintiff fails to carry his burden by pointing to any objective medical evidence or opinion supporting any greater functional limitations from obesity or fatigue.

**III. Conclusion and Recommendation**

For the reasons explained herein, and because it is supported by substantial evidence, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED.**

                                        */s Stephanie K. Bowman*
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH F. KEITH, II

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 16-cv-1072

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).